# In the United States District Court
# for the
# Western District of Texas

| | | |
|---|---|---|
| C.W., et. al. | § | |
| | § | |
| v. | § | |
| | § | SA-10-CV-1044-XR |
| Scott Ash James Zirus, et. al. | § | |

## ORDER

On this date, the Court considered Defendant AIFS's Motion for Summary Judgment (docket no. 126), the Plaintiffs' Response, and the various replies thereto. For the reasons stated below, the Defendant's motion is denied in part and granted in part. AIFS's motion to strike (docket no. 154) is dismissed as moot inasmuch as the Court did not rely upon the contested exhibits in deciding this motion.

### Factual and Procedural Background

The plaintiffs are Plaintiffs and their legal representatives; they are bringing claims against the defendant for events that occurred in the summer of 2009. In that summer, each of the boys attended Camp Stewart for Boys, a boys-only summer camp in Kerr County, Texas. While at Camp Stewart, each of the boys was allegedly molested by a camp counselor, Scott Ash James Zirus.

Zirus, an Australian national who is currently serving a 40-year sentence in the Texas Department of Corrections for the sexual assault of two of the boys, arrived to Camp Stewart through the American Institute for Foreign Study (AIFS), which does business under the name Camp America. AIFS is a corporation that specializes in finding foreign individuals who wish to work as camp counselors and matching them with camps in the United States that need counselors.

In July 2008, AIFS and Camp Stewart entered into a written contract in which AIFS agreed to provide transportation, insurance, and visa arrangements for those individuals whom Camp Stewart selected as its camp counselors. Under the terms of the agreement, AIFS was obligated to process applications completed by individuals interested in working as a counselor, conduct applicant interviews, and obtain applicant reference letters.

Camp Stewart agreed to screen all applicants referred by AIFS, and to conduct an independent review and evaluation of the information provided by AIFS. Camp Stewart was to make the final selection of any AIFS participant it found suitable for a position as a camp counselor. Further, Camp Stewart was responsible for monitoring the performance of the participants it chose as camp counselors, and for making sure those participants knew the definition of, and penalties for, sexual and physical abuse of children.

In 2008, Zirus applied to AIFS for placement as a camp counselor in the United States. The AIFS application process requires an applicant to provide a variety of information, including medical and work history, at least two signed letters of recommendation, and a personal statement of interest. In addition, AIFS uses previous AIFS camp counselors as independent contractors to interview an applicant. Further, AIFS requires all applicants to consent to a criminal background check.

Zirus completed substantially all of the AIFS requirements. He completed an application form in which he described an extensive youth counseling work history; he provided two letters of recommendation, though one of the letters was not signed, contrary to AIFS requirements; he consented to a criminal background check, which indicated that he had no prior criminal history in Australia; and he conducted an interview with an AIFS independent contractor, which left the interviewer with a very positive impression of Zirus. In addition, Zirus also furnished AIFS with

a "Working with Children Check" certification from the government of Western Australia. AIFS did not conduct any further investigation into Zirus's background, and on the basis of his credentials recommended him for placement in the United States. Camp Stewart subsequently selected Zirus as a counselor for the summer of 2009.

In the second amended complaint, Plaintiffs allege that AIFS (1) negligently hired, supervised, trained and retained Zirus; (2) was negligent "for failing to warn the minors and their parents about the foreseeable risks of sexual abuse"; and (3) aided and abetted Camp Stewart's breach of its fiduciary duties.

### AIFS's Motion for Summary Judgment

AIFS argues that it had no duty to the Plaintiffs as a matter of law, the Plaintiffs were not third-party beneficiaries to the AIFS/Camp Stewart agreement, it had no duty to hire, supervise, train or retain Zirus, in the alternative it did not breach any duty to the Plaintiffs, and no act or omission of AIFS proximately caused Plaintiffs' injuries. Further, AIFS argues that the criminal acts of Zirus were a superseding case of Plaintiffs' injuries. In addition, AIFS argues that Plaintiffs have no viable negligent hiring/supervision and training claim against it because Camp Stewart was Zirus's employer. Finally, AIFS argues that Plaintiffs have no viable aiding and abetting claim.

### Standard of Review

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a

scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

## Analysis

I.  Negligent hiring, supervision, training and retention claims

An employer has a duty to adequately hire, train, and supervise employees. *See Patino v. Complete Tire, Inc.*, 158 S.W.3d 655, 660 (Tex. App.-Dallas 2005, pet. denied); *see also Golden Spread Council, Inc. # 562 v. Akins*, 926 S.W.2d 287, 290 (Tex. 1996) (holding that the defendant could not be held liable under a theory of negligent hiring because it had not hired the individual whose actions were at issue). It is undisputed that only Camp Stewart was Zirus's employer. There is no claim that AIFS and Camp Stewart were joint employers. AIFS's motion for summary judgment regarding these claims is granted.

II.  Negligent failure to warn claim

To recover on a negligence claim the Plaintiffs must prove that AIFS owed them a duty of reasonable care, that AIFS breached that duty, and that their harm was proximately caused by that breach. *See Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).

A.  Whether AIFS owed the Plaintiffs any duty of reasonable care

Whether a duty exists is a threshold question of law for the court to decide based on the facts of each case. *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex. 1999). If there is no duty there can be no negligence liability. *Id*. Thus the Court must determine (1) whether the contract between AIFS and Camp Stewart imposed on AIFS any duty of care to the Plaintiffs; and (2) whether Texas common law imposed on AIFS any duty of care to the Plaintiffs. The Court finds that the contract did not impose a duty on AIFS; however, the Court finds that Texas common

law imposed at least a limited duty of care upon AIFS. Accordingly, summary judgment cannot be granted on this claim.

                1.        Whether AIFS had a contractual duty to the Plaintiffs

It appears that the Plaintiffs have conceded this issue, as they do not address it in their Response to AIFS's summary judgment motion. The plain language of the contract makes it clear that Camp Stewart was to be responsible for the actions of any camp counselors that AIFS referred to Camp Stewart, and that AIFS would bear no responsibility for the actions of the counselors while they were employed at the Camp. As such, the Plaintiffs cannot, and do not, rely on the contract to support their argument that AIFS owed them a duty of care.

                2.        Whether Texas common law imposes a duty on AIFS

In Texas, an actor generally has no legal duty to protect another from the criminal acts of a third person. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). However, despite this general maxim, a determination regarding whether a court should impose a common law duty still requires that court to consider a number of factors, including the risk, foreseeability, and likelihood of injury to the person harmed, weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the risk of injury, and the consequences of placing that burden on the actor. *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983). Other important factors for a court to consider include whether one party has superior knowledge of the risk, and whether there exists a right to control the actor whose conduct precipitated the harm. *Graff v. Beard*, 858 S.W.2d 918, 920 (Tex. 1993).

When determining whether to impose a duty on an entity for the acts of another that cause harm to a third party, the entity's retained right to control the conduct of the actor or

property that caused the harm is often an important factor. *See e.g., City of Denton v. Page*, 701 S.W.2d 831, 835 (Tex. 1986) (noting that, in premise liability cases, possession and control of the property are necessary predicates for the imposition of a duty of care); *Read v. Scott Fetzer Co.*, 990 S.W.2d 732 (Tex. 1998) (finding employer had retained sufficient right to control conduct of its independent contractor's employee to warrant imposition of duty because contract with independent contractor required the employees of the independent contractor make sales exclusively through in-home demonstrations). However, while this factor is important, it does not obviate the need for a traditional duty analysis, taking into account all of the relevant factors that bear on whether the imposition of a duty is appropriate. *See Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287, 290–91 (Tex. 1996) (balancing all of the relevant factors, including the Council's right to control a particular individual, when making duty determination); *Black + Vernooy Architects v. Smith*, 346 S.W.3d 877, 885–90 (Tex. App.–Austin 2011, no pet.) (finding no duty primarily because architects possessed no right to control conduct of subcontractors, but also considering other relevant duty factors). Thus, a determination concerning whether AIFS owed the Plaintiffs a duty of care must weigh all of the relevant factors. In this case, the Court finds that the relevant factors indicate that AIFS did have at least a limited duty to the Plaintiffs; as such summary judgment cannot be granted on the basis of this element.

   The Court finds the reasoning utilized by the Texas Supreme Court in *Golden Spread Council* to be persuasive, as applied to this case. In that case a local church was seeking to start its own Boy Scout troop and was looking for a scoutmaster. *Golden Spread Council*, 926 S.W.2d at 289. The Golden Spread Council (GSC), the local embodiment of the Boy Scouts of America, had been made aware of allegations of child sexual abuse against an assistant scoutmaster. *Id*. Despite the knowledge of these allegations, the GSC recommended the assistant scoutmaster to

the church for the position of head scoutmaster. *Id*. The church accepted the individual as head scoutmaster, and soon thereafter the scoutmaster was arrested and convicted for child molestation. *Id*.

The Texas Supreme Court, balancing all of the factors that are relevant when determining whether to impose a duty on an entity, concluded that the GSC did owe the injured child a limited duty. *Id*. at 290–91. In particular, the Court noted that the injury to the child was foreseeable because the GSC was aware of earlier complaints of sexual misconduct against the scoutmaster. *Id*. at 290. Further, the Court noted that the risk and likelihood of injury were high in this case, where the scoutmaster would be in close contact with children. *Id.* at 291. The Court also noted that, although the GSC did not have the right to control the day-to-day activities of the church scout troop or its scoutmasters, the Rules and Regulations of the Boy Scouts of America, by requiring local councils such as the GSC to provide assistance to groups seeking to acquire scoutmasters, gave the GSC the ability to not recommend an individual about whom it had information pertaining to sexual misconduct with children. *Id*. The Court balanced these considerations against the social utility and magnitude of the burden being placed on the GSC, concluding that while the social utility of local Boy Scout councils was high, the magnitude of the burden in this case was relatively low. *Id*. The GSC was not required to investigate the scoutmaster; it was only required to act reasonably in light of the information it had already received. *Id*. Thus the Court held that, considering the above factors, the GSC's affirmative act of recommending the scoutmaster to the church created a duty on the part of the GSC to use reasonable care when making that recommendation, in light of the information it had received. *Id*.

The factors weighing in favor of imposing a duty in Golden Spread Council also weigh in favor of imposing a duty in this case. Just as the risk of sexual abuse was foreseeable to the GSC, it was also foreseeable to AIFS. The AIFS Interviewer's Handbook demonstrates that AIFS was aware of the general risk of sexual abuse that the nature of its program–placing young adults in camp counselor positions where they would work with children. While this awareness is not as substantial as the GSC's awareness of specific complaints of sexual assault against a particular scoutmaster, for purposes of the duty element in a negligence claim, and contrary to AIFS's assertions in its Reply, only the general danger of harm, not the exact sequence of events, and the particular plaintiff, need to be foreseeable. *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 655 (Tex. 1999). Thus it is not necessary for AIFS to foresee the risk that Zirus, specifically, posed to the children of Camp Stewart, but only that there was a risk of sexual abuse to children.

Additionally, the risk and likelihood of injury are similarly high in this case. Just as the GSC was recommending an adult man to work closely with children, AIFS was also recommending an adult man to work closely with children. Given the particular susceptibility of young children, this factor weighs in favor of imposing a duty on AIFS. Further, AIFS's ability to control Zirus was substantially similar to the GSC's ability to control the scoutmaster it recommended. Neither organization had control over the day-to-day activities of the individuals who ultimately committed the harm. However, both organizations had written obligations to assist the entities that did have day-to-day control over the individuals with the placement of those individuals. The GSC was obliged to assist its chartered organizations, such as the church, with obtaining scoutmasters; similarly, AIFS agreed to work with camps in the United States to facilitate the placement of participants in its program at those camps. This obligation weighs in

favor of imposing at least a limited duty on AIFS with regard to acting reasonably when recommending participants to American camps.

However, the above considerations must be weighed against the social utility of AIFS's conduct and the magnitude of the burden of imposing a duty on AIFS in this case. The social utility of AIFS's program is high; the organization facilitates cultural exchanges and learning by matching up foreign nationals with their American counterparts at camps. However, the burden of imposing a duty of reasonable care in this case is small, particularly in light of the fact that AIFS has already undertaken a duty to perform at least some screening of its participants.

Accordingly, this Court finds that the balance of the above factors indicates that AIFS had at least a limited duty of care with respect to the Plaintiffs, and as such summary judgment cannot be granted on this claim.

      B.      Whether AIFS breached its duty of care

Whether an imposed duty has been breached is generally a question of fact for the jury to decide. *TXI Operations, L.P. v. Perry*, 278 S.W.3d 763, 765 (Tex. 2009) (stating that negligence is commonly a question of fact unless the evidence establishes a complete lack of negligence as a matter of law). In this case, AIFS had a duty to use reasonable care in screening its applicants and recommending them for placement. As mentioned above, AIFS obtained two reference letters from Zirus; however, one of the letters was unsigned, in violation of AIFS policy. Further, it is unclear whether AIFS contacted Zirus' references to make sure they were valid; indeed the Plaintiffs contend that the references were not previous employers, but were instead friends of Zirus. This evidence is sufficient to create an issue of material fact concerning whether AIFS breached its duty of reasonable care. As such, summary judgment cannot be granted on this claim.

C.      Whether AIFS's breach was a proximate cause of the Plaintiffs' harm

Because summary judgment cannot be granted on the first two elements of the Plaintiffs' negligence claim, the Court turns to the final element of proximate cause. Proximate cause consists of two components, (1) cause-in-fact; and (2) foreseeability. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. National Development and Research Corp.*, 299 S.W.3d 106, 122 (Tex. 2009). Cause-in-fact is established by showing that the act or omission was a substantial factor in bringing about the harm that occurred, and without which the harm would not have occurred. *Id*. Foreseeability requires proof that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others. *Lee Lewis Const., Inc. V. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001). Foreseeability requires the actor to anticipate only the general character of the injury that might occur, not the specific manner in which the injury will occur. *Id*.

A material question of fact exists concerning whether AIFS's actions were a cause-in-fact of the Plaintiffs' harm. Because it is unclear what AIFS would have discovered if it had followed up on Zirus' references, it is similarly unclear whether or not AIFS would have still accepted Zirus for participation in its program based on what it would have discovered from his references. Accordingly, summary judgment cannot be granted on the basis of cause-in-fact.

Similarly, an issue of material fact exists concerning whether the harm to the Plaintiffs was foreseeable. A crucial issue bearing on foreseeability in this case is whether Zirus' intervening criminal actions amounted to a superseding cause. Generally, the intervening criminal acts of a third party are a superseding cause of harm to another, even when the initial actor's conduct was negligent in creating a situation that allowed the third party to commit the crime. *Phan Son Van v. Pena*, 990 S.W.2d 751, 753 (Tex. 1999) (citing the Restatement

10

(Second) of Torts § 448 (1965)). However, the third party's criminal conduct is not a superseding cause if the initial actor, at the time of his negligent act, should have realized that his negligence had created a situation in which a third party might avail himself of the ability to commit a crime. *Id*. Thus when determining whether a third party's intervening criminal acts constitute a superseding cause, and thus whether the initial actor should have realized that his actions created the likelihood for such criminal conduct, the Texas Supreme Court has held that the following factors are relevant:

    (a) the fact that the intervening force brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

    (b) the fact that the intervening force's operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of the force's operation;

    (c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

    (d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

    (e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

    (f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

*Id*. at 754.

    In *Pena*, a gas station attendant sold alcohol to minors who were members of a gang. *Id*. at 752. Those gang members then became intoxicated and later raped and murdered two girls. *Id*.

The Texas Supreme Court utilized the above factors to find that the gas station's sale of alcohol to the minor gang members was not the proximate cause of the murders; the gang members' criminal acts were a superseding cause because the harm of those acts, murder, was not the type of harm that would normally result from the sale of alcohol to minors. *Id*. at 755.

Conversely, the Texas Supreme Court has found that there is no superseding cause when the risk of harm that the actor's conduct exposes the injured individual to actually occurs. *Dew v. Crown Derrick Erectors, Inc.*, 208 S.W.3d 448, 453 (Tex. 2006). In *Dew,* an oil rig worker was killed when he fell through an inadequately protected ladder hole on the rig. *Id*. at 450. The company in charge of installing the appropriate protections around the hole argued that it was entitled to a jury instruction on new and independent cause because it was not foreseeable that the temporary precautions it had placed around the hole would be altered by someone else. *Id*. at 452–53. The Court, relying on the *Pena* factors, held that such an instruction was not warranted in this case because the harm that occurred, a worker falling through the hole, was a foreseeable consequence of the inadequate, temporary precautions. *Id*. at 453. Thus, even though the original precautions had been altered, because those original precautions were inadequate, their alteration did not change the nature of the foreseeable risk, and thus was not a superseding cause. *Id*.

Considering the *Pena* factors, an issue of material fact exists regarding whether Zirus's assault on the Plaintiffs was a foreseeable risk of AIFS's failure to contact his references. Sexual assault on a child is certainly a foreseeable consequence of employing adult males as camp counselors; as such this Court cannot conclude that the first three *Pena* factors, which all bear on the extraordinary nature of the intervening act, are sufficiently satisfied so as to be exculpatory. However, because Zirus's acts were criminal, were wrongful to the Plaintiffs, and impose a large degree of culpability on Zirus (at least as to the two minors' assaults for which he pled guilty),

this Court also cannot say that the last three *Pena* factors are necessarily inculpatory. Accordingly, a determination based on these factors is properly for the jury. Because material issues of fact exist regarding both cause-in-fact and foreseeability, summary judgment cannot be granted on the basis of proximate cause.

The Court finds that AIFS owed the Plaintiffs at least a limited duty, and also finds that there are material issues of fact with regard to whether that duty was breached and with regard to whether any breach was the proximate cause of the Plaintiffs harm. Accordingly, summary judgment against the Plaintiffs' negligent failure to warn claim is DENIED.

III.     The Plaintiffs' aiding and abetting claim

The Plaintiffs have not addressed their aiding and abetting claim in their Response to AIFS's summary judgment motion; as such, the Court focuses primarily on the Plaintiffs' aiding and abetting claim as set forth in their Second Amended Complaint. In that complaint, the Plaintiffs allege that AIFS aided and abetted Camp Stewart in Camp Stewart's breach of its fiduciary duty to put the interests of the Plaintiffs ahead of its own, and to disclose all material facts to the Plaintiffs and their parents. Assuming, but not deciding, that these allegations are factually sufficient to state at least some type of aiding and abetting claim, the Court nevertheless grants summary judgment because the Plaintiffs have failed to present an issue of material fact.

While the question of a person or entity's liability for the tortious actions of another is somewhat unclear in Texas, federal courts have recognized that various theories of civil liability for the actions of another have been included in the broad category of liability known as concerted tortious action. *See e.g., Halberstam v. Welch*, 705 F.2d 472, 476 (D.C. Cir. 1983). Included in this broad category are claims brought under a theory of aiding and abetting. *Id*. The Fifth Circuit, in the securities law context, has articulated the elements of an aiding and abetting

claim: (1) some other party has committed a law violation; (2) the accused party had general awareness that his role was part of an overall activity that was improper; and (3) the accused party knowingly and substantially assisted the violation. *See Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 94–95 (5th Cir. 1975).

While Texas has not precisely articulated an aiding and abetting theory of liability, Texas does recognize an entity's liability to a third party for another entity's breach of its fiduciary duty. *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 509, 514 (Tex. 1942) (holding that when a third party knowingly participates in the breach of a duty of a fiduciary, that third party becomes a joint tortfeasor with the fiduciary and is liable as such). Importantly, however, Texas has refused to expressly create a cause of action based on concert of action. *Juhl v. Airington*, 936 S.W.2d 640, 643 (Tex. 1996). Despite refusing to recognize a claim based on a theory of concert of action, Texas courts have nevertheless analyzed the concert of action question by relying on the Restatement (Second) § 876 for a formulation of the elements that make up a concert of action claim.. *See e.g., Juhl*, 936 S.W.2d at 643 (utilizing § 876 to analyze, but ultimately reject, police officer's concert of action claim against group of protestors outside of an abortion clinic); *Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 69 (Tex. 1989) (citing § 876 as recognizing concert of action theory, but declining to extend that type of liability to latent disease product liability cases); *III Forks Real Estate, L.P. v. Cohen*, 228 S.W.3d 810, 815 (Tex. App.–Dallas 2007) (utilizing § 876 to analyze, but again ultimately reject, real estate agency's claim against guarantor's wife). Because Texas courts have shown a willingness to undergo an analysis of purported concert of action claims, it would appear that Texas is open to recognizing a claim based on concert of action, should a plaintiff succeed in proving the requisite elements.

However, the Texas cases also demonstrate that the Plaintiffs have not succeeded in satisfying the potential burden that the Texas courts would place on them. The Texas Supreme Court has stated that if it were to adopt § 876(a), the "common design" concert of action liability; it would require allegations of specific intent, or at least gross negligence, to state a cause of action. *Juhl*, 936 S.W.2d at 644. The Court has also addressed "substantial assistance" concert of action liability, noting that comment d. of § 876 listed five factors to consider when determining whether a defendant gave substantial assistance to the wrongdoer: (1) the nature of the wrongful act; (2) the kind and amount of assistance; (3) the relation of the defendant and the actor; (4) the presence or absence of the defendant at the occurrence of the wrongful act; and (5) the defendant's state of mind. *Id*. Further, the Court has noted that the purpose of the concert of action theory is to deter antisocial or dangerous behavior. *Id*. (citing cases where concert of action liability was used to hold individuals liable for group assault, drag racing, and encouragement of reckless driving).

In *Juhl*, a police officer brought a tort claim against a group of anti-abortion protestors for a back injury the officer allegedly sustained while trying to move a member of the group . *Id*. at 641. The Texas Supreme Court, in affirming the lower court's grant of summary judgment, declined to recognize the officer's concert of action claim on both "common design" grounds and on "substantial assistance" grounds. *Id*. at 644–45. The Court stated that the officer's allegations of negligence were not sufficient to state a claim for "common design" liability. *Id*. at 644. The Court also found that the five "substantial assistance" factors did not weigh in favor of a finding that the anti-abortion protestors substantially assisted the individual who caused the officer's back injury. *Id*. at 645. The Court noted that the type of conduct, passively resisting arrest, was not the highly dangerous antisocial behavior likely to cause serious injury or death

sought to be deterred by a concert of action theory of liability. *Id*. Further, the Court noted that the relationships among the members of the group were too tenuous to impose concert of action liability: no member of the group had a right to control any other member, and each member was given his own choice regarding how to respond to police action. *Id*.

Similarly, the Dallas Court of Appeals, relying heavily on the Texas Supreme Court's decision in *Juhl*, affirmed the lower court's grant of summary judgment against a real estate agency by holding that a guarantor's wife could not be held liable under a concert of action theory because she did not render substantial assistance to her husband. *III Forks Real Estate*, 228 S.W.3d at 816. In that case, the plaintiff, a real estate agency, was seeking to recover the balance of a defaulted lease from the guarantor. *Id*. at 813. The real estate agency alleged that the guarantor had made false representations of his finances to the previous holder of the lease, and sought to hold the guarantor's wife liable based on a theory of concert of action. *Id*. The court first noted that whether Texas recognized a concert of action theory of liability was an open question. *Id*. at 815. The court then proceeded to find that the real estate agency's allegation that the guarantor's wife was liable under a "common design" theory of concert of action liability, because she conferred upon her husband the authority to act for their marital estate, was not sufficient to state a claim for that kind of liability. *Id*. Next, the court addressed the "substantial assistance" theory of liability, utilizing the five factors articulated in *Juhl*, and concluding that those factors did not weigh in favor of finding that the guarantor's wife substantially assisted her husband. *Id*. at 816. Specifically, the court found that the guarantor's wife did not give the requisite type of assistance necessary for a valid concert of action claim predicated on substantial assistance: the wife had authorized the husband to act for the marital estate; she had not assisted in preparing or furnishing the financial information for the lease. *Id*. Further, the wife possessed

no right to control her husband's actions with regard to the furnishing of the financial statement. *Id*.

Just as the police officer in *Juhl* and the real estate agency in *III Forks Real Estate* failed to create issues of material fact with regard to the purported elements of a concert of action claim, the Plaintiffs also fail to create an issue of material fact with regard to their aiding and abetting claim. As noted above, it appears that Texas courts consider civil aiding and abetting claims as concert of action claims. The Plaintiffs have failed to state a claim for "common design" concert of action liability. While their complaint does include an allegation of gross negligence, that allegation is simply a legal conclusion, and is not supported by facts that could support a "common design" claim.

The Plaintiffs have also failed to demonstrate that the five substantial assistance factors weigh in their favor. Specifically, while the failure of an organization to adequately screen camp counselors could result in serious injury, this failure is not akin to the types of highly dangerous activities, such as group assault and drag racing, for which concert of action liability is usually reserved. Further, and like the assistance given by the wife in *III Forks Real Estate*, the type of assistance given by AIFS was not the requisite type of assistance necessary to impose concert of action liability. AIFS simply provided Camp Stewart with assistance in finding camp counselors; the final decision with regard to hiring those counselors, and responsibility for conducting an independent review of those counselors, remained with Camp Stewart. Additionally, and like the anti-abortion protestors in *Juhl*, AIFS did not possess a sufficient right to control Camp Stewart's actions to justify imposing concert of action liability on it, because Camp Stewart's responsibilities with regard to the ultimate employment of the camp counselors made available to it by AIFS placed the right to control those counselors exclusively with Camp Stewart. Finally,

AIFS was not present when Zirus sexually abused the Plaintiffs, nor did it possess the requisite state of mind with regard to assisting Camp Stewart's breach of its duties.

Because the Plaintiffs have failed to state a claim for "common design" concert of action liability, and because the five factors that must be considered when deciding whether to impose "substantial assistance" concert of action liability do not weigh in favor of its imposition, the Court finds that the Plaintiffs have failed to create an issue of material fact with regard to their aiding and abetting claim.

## Conclusion

Defendant's motion for summary judgment (docket no. 126) is denied in part and granted in part. The Court finds that there exists an issue of material fact with regard to the negligent failure to warn claim. Defendant's motion for summary judgment regarding that claim is denied. The remainder of Defendant's motion is granted.

AIFS's motion to strike (docket no. 154) is dismissed as moot inasmuch as the Court did not rely upon the contested exhibits in deciding this motion.

SIGNED this 29th day of August, 2012.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE